UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

MEGAN SEDGWICK,           )
                          )
          Plaintiff,      )
                          )
v.                        )          No. 2:22-CV-120-DCP
                          )
KILOLO KIJAKAZI,          )
Acting Commissioner of Social Security,   )
                          )
          Defendant.      )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 21]. Now before the Court are Plaintiff's Motion for Judgment on the Pleadings [Doc. 16] and Defendant's Motion for Summary Judgment [Doc. 19]. Megan Sedgwick ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of Defendant Kilolo Kijakazi ("Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I.      PROCEDURAL HISTORY

On June 27, 2018, Plaintiff completed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* [Tr. 187–93], and an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* [*Id.* at 194–99]. Plaintiff claimed a period of disability that began on January 1, 2018 [*Id.* at 187, 194]. After her applications were denied initially [*id.* at 92–96] and upon reconsideration [*id.* at 100–09], Plaintiff requested a hearing before an ALJ [*Id.* at 112–14]. A telephonic administrative hearing was held on July 26, 2021 [*Id.* at 31–49]. On August 9,

2021, the ALJ found that Plaintiff was not disabled [*Id.* at 12–25]. The Appeals Council subsequently denied Plaintiff's request for review on August 6, 2022 [*id.* at 1–11], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on October 4, 2022, seeking judicial review of the Commissioner's final decision under 42. U.S.C. § 405(g) [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.  ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since January 1, 2018, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairment: loss of central acuity due to optic nerve sheath meningioma. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she should avoid hazards such as unprotected heights and moving mechanical parts and depth perception would not need to be a job function.

6. The claimant is capable of performing past relevant work as a Housekeeper (DOT 323.687-014), which is light with an SVP of 2. This work does not require the performance of work-related

activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2018, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 17–24].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally,

3

the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not try the case *de novo*, weigh the evidence, or make credibility determinations nor resolve conflicts in the evidence, nor decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the plaintiff and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

4

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R.

5

§§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.  ANALYSIS

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ erred "in not finding her depression and anxiety to be a severe impairment" at step two in the sequential process [Doc. 17 p. 9]; in failing to properly consider her impairments in combination when formulating her RFC [*id.* at 7–11]; and in evaluating the intensity and limiting effects of her symptoms [*Id.* at 11–12]. The Commissioner responds that the ALJ's decision is supported by substantial evidence because the ALJ properly found that Plaintiff's mental impairments are not severe [Doc. 20 p. 12]; properly weighed all of Plaintiff's impairments in combination when determining her RFC [*id.* at 7]; and properly considered all available evidence in evaluating the intensity, persistence, and limiting effects of Plaintiff's symptoms [*id.* at 13–14]. Upon review, the Court finds that Plaintiff has not presented a valid basis for disturbing the Commissioner's decision or remanding the case for further proceedings.

### A.  The ALJ's Evaluation of Plaintiff's Impairments at Step Two

Plaintiff first argues that the ALJ erred by finding her mental impairments were not severe at step two [Doc. 17 p. 9]. The Commissioner responds that the ALJ appropriately found that Plaintiff's mental impairments were not severe and that there is otherwise no evidence in the record

6

that Plaintiff had a "severe" mental impairment within the meaning of the regulations [Doc. 20 p. 12]. For the reasons discussed below, the Court finds that the ALJ did not err in finding Plaintiff's mental impairments were not severe and, even if the ALJ had erred, any such error would be harmless.

### 1. Applicable law

At step two in the sequential process, the ALJ must "consider the medical severity of [the claimant's] impairment(s)," 20 C.F.R. § 404.1520(a)(4)(ii), and whether the impairment or combination of impairments is "severe." *Id.* § 404.1521. "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1522(a). Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The step two determination is a "*de minimis* hurdle" in that "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007)). However, a claimant must still "produce or point to some evidence that indicates that an alleged impairment impacts his ability to perform basic work activities." *Johnson v. Astrue*, No. 3:09-CV-317, 2010 WL 2803579, at *5 (E.D. Tenn. June 30, 2010), *report and recommendation adopted*, 2010 WL 2836137 (E.D. Tenn. July 15, 2010).

If an ALJ finds that a claimant has at least one severe impairment, they must proceed with the remainder of the sequential analysis and consider all of the claimant's severe and non-severe impairments when determining their RFC. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all

7

of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"); *see also Simpson,* 344 F. App'x at 190 ("[A] finding of severity as to even one impairment clears the claimant of step two . . . and should cause the ALJ to consider both the severe and non-severe impairments in the remaining steps").  Because an ALJ must consider all of a claimant's impairments in formulating their RFC, including non-severe impairments, the Sixth Circuit has found it "legally irrelevant" whether an ALJ has erred in finding one or more of a claimant's impairments was not severe, provided the ALJ (1) found at least one of the claimant's impairments was severe, and (2) "properly consider[ed] [the] nonsevere impairments at later steps."  *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851–52 (6th Cir. 2020) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)).

## 2. The ALJ properly found Plaintiff's mental impairments were not severe

In his step two analysis, the ALJ first found that Plaintiff's "loss of central acuity due to optic nerve sheath meningioma" was a severe impairment as it "significantly limit[ed] [Plaintiff's] ability to perform basic work activities" [Tr. 17–18].  The ALJ then addressed Plaintiff's alleged mental impairments, finding:

> The claimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere.  She did not engage in mental health treatment during the relevant period and did not require emergent or inpatient care for exacerbation of symptoms.  She displayed and endorsed depressive symptoms during a consultative examination, but was not typically described as appearing depressed or anxious during medical treatment.

[*Id.* at 18]. In making this finding, the ALJ analyzed the four mental functioning areas set forth in 20 C.F.R. § 404.1520a, also known as the "Paragraph B" criteria [*Id.*; *see also* 20 C.F.R. pt. 404, subpart P, app. 1 § 12.00(A)(2)(b) (setting forth the "paragraph B criteria")]. The ALJ found that Plaintiff had no limitations in (1) understanding, remembering, or applying information, and (2) concentrating, persisting, or maintaining pace, and only mild limitations in (3) interacting with others, and (4) adapting or managing herself [Tr. 18–19]. The ALJ based his findings on Plaintiff's own statements in the record, the treatment records, and the report of Plaintiff's consultative examiner [*Id.*]. The ALJ concluded that "[b]ecause claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere" [*Id.* at 19 (citing 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1))].

On appeal, Plaintiff argues that the ALJ erred in finding Plaintiff's mental impairments were not severe [Doc. 17 p. 7]. Specifically, Plaintiff argues that the ALJ erred "in not finding her depression and anxiety to be a severe impairment" [*Id.*]. Plaintiff relies on the findings of psychological consultative examiner, Chad Sims, Ph.D. ("Dr. Sims"), who Plaintiff notes, "opined that the Plaintiff had persistent depressive disorder with anxious distress and . . . might be moderately impaired in her ability to adapt to change" [*Id.* (citing Tr. 370–71)]. Plaintiff asserts that "[a]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience" [*id.* (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988))], and that the ALJ's error warrants remand for proper consideration of Plaintiff's mental impairments [*Id.*].

9

The Commissioner responds that the ALJ reasonably found that Plaintiff's mental impairments were not severe [Doc. 20 p. 12]. The Commissioner asserts that "there is no evidence that Plaintiff had a 'severe' impairment within the meaning of the regulations" because, "[a]s the ALJ recognized, Plaintiff rarely complained of any psychiatric concerns; she frequently denied having any psychiatric symptoms; there were almost no abnormal mental status findings; and she received no dedicated psychiatric treatment, despite receiving care for her other concerns" [*Id.* (citations omitted)]. Furthermore, the Commissioner argues that "[a]s the ALJ repeatedly emphasized, Plaintiff did not require aggressive medical treatment, frequent hospital confinement, or more invasive intervention for this condition during the period at issue" and "was never even prescribed psychotropic medication nor referred to psychotherapy" [*Id.* (citing Tr. 18, 22)]. The Commissioner concludes in arguing that "by only relying on a single, one-time psychiatric consultative examination, Plaintiff did not carry her burden of proof showing that depression or anxiety significantly limited her ability to perform basic work activities" [*Id.* (citation omitted)].[1]

The Court identifies no error in the ALJ's finding that Plaintiff's mental impairments were not severe. The only record evidence Plaintiff relies on to argue the ALJ should have found Plaintiff's mental impairments were severe is the opinion of Dr. Sims [Doc 17 p. 9 (citing Tr. 370–71)], who diagnosed Plaintiff with "Persistent Depressive Disorder, With Anxious Distress, Moderate, With Pure Dysthymic Syndrome" and opined that "[Plaintiff's] current psychiatric state appeared anxious and depressed" and that "[s]he shows evidence of a moderate impairment in her

---

[1] The Commissioner does not argue that any error by the ALJ in finding Plaintiff's mental impairments were not severe is harmless. The Commissioner does, however, raise the harmlessness analysis in an earlier section of her brief, stating that "any alleged failure by the ALJ to find any one impairment to be severe can be harmless if the symptoms from that impairment were nevertheless considered by the ALJ in assessing the RFC" [Doc. 20 p. 11 (citing *Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013))].

10

social relating" [Tr. 370–71]. The ALJ, however, found Dr. Sims's opinion unpersuasive [*Id.* at 22–23]. Plaintiff does not challenge that finding on appeal. *See Yvetta H. v. Comm'r of Soc. Sec.*, No. 2:21-cv-2904, 2022 WL 2352453, at *7 (S.D. Ohio June 30, 2022) ("Plaintiff points to Dr. Reese's 2019 opinion as demonstrating that her migraines and mental health impairments were severe. Plaintiff, however, does not challenge the ALJ's assessment of this opinion, and the ALJ was not required to rely on an unsupported medical opinion[.]" (citing *Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir. 2001))).

In addition, the ALJ considered the same findings from Dr. Sims's opinion that Plaintiff cites on appeal when analyzing the severity of Plaintiff's impairments [Tr. 18 (noting that "[Plaintiff] displayed and endorsed depressive symptoms during a consultative examination [with Dr. Sims]"); *id.* at 19 (noting as part of his evaluation of Plaintiff's ability to adapt or manage herself that Dr. Sims "assessed a deficit in this area of functioning")]. The Court may not now reweigh this evidence. *See Bialek v. Comm'r of Soc. Sec. Admin.*, No. 20-cv-11508, 2021 WL 2935249, at *3 (E.D. Mich. July 13, 2021) ("The ALJ considered and discussed the very evidence on which Plaintiff relies. The Court cannot reweigh this evidence at this juncture."). Rather, the question for this Court is whether substantial evidence supports the ALJ's severity findings. *See Blakley*, 581 F.3d at 406 ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." (internal quotations omitted)).[2]

Here, the Court finds the ALJ's finding that Plaintiff's mental impairments were not severe

---

[2] Even if the Court could reweigh this evidence, it would be insufficient to establish that Plaintiff's mental impairments were severe because the findings Plaintiff relies on from Dr. Sims only speak to Plaintiff's diagnoses, not their severity. *See Higgs*, 880 F.2d at 863 ("The mere diagnosis of [an impairment] . . . says nothing about the severity of the condition.").

is supported by substantial evidence. In finding Plaintiff's depression did not cause more than minimal limitations in her ability to perform basic mental work activities, the ALJ relied on the fact that Plaintiff "did not engage in mental health treatment during the relevant period," "did not require emergent or inpatient care for exacerbation of symptoms," and "was not typically described as appearing depressed or anxious during medical treatment" [*Id.* at 18]. The ALJ's reliance on Plaintiff's medical records indicating that Plaintiff did not exhibit depression- or anxiety-related symptoms along with Plaintiff's lack of mental health treatment provides substantial evidence for the ALJ's conclusion that Plaintiff's depression and anxiety were not severe impairments. *See, e.g.*, *Mundy v. Comm'r of Soc. Sec.*, No. 1:11-cv-834, 2013 WL 428649, at *11 (S.D. Ohio Feb. 4, 2013) (finding the ALJ's conclusion that the plaintiff's depression was not a severe impairment was supported by substantial evidence as "the ALJ noted that [the plaintiff] has not and is not receiving therapy for any mental impairment" and "the record [did] not contain any objective evidence from a mental health provider supporting a finding of severe depression" other than "mild symptoms" identified in the consultative examiner's opinion).

As to Plaintiff's ability to adapt and manage herself, the ALJ found that Plaintiff only had mild limitations [Tr. 19]. In making this finding, the ALJ noted that Plaintiff "was noncompliant with radiation therapy and [Dr. Sims] assessed a deficit in this area of functioning" [*Id.*]. At the same time, the ALJ also noted that Plaintiff "presented with proper attention given to grooming and hygiene and did not allege[] an inability to perform personal care," she "reported managing finances, preparing meals, caring for her children, and performing household chores," and she "did not demonstrate emotional outburst or show difficulty managing emotions" [*Id.*]. This is substantial evidence to support the ALJ's conclusion that Plaintiff had only mild limitations in her ability to adapt or manage herself. *See Debra A. H. v. Comm'r of Soc. Sec.*, No. 2:20-cv-5482,

12

2022 WL 345184, at *9 (S.D. Ohio Feb. 4, 2022) (finding the plaintiff's statements about her ability to perform daily activities supported the ALJ's conclusion that she had only mild impairments in adapting or managing herself); *Ellis v. Comm'r of Soc. Sec.*, No. 3:20-cv-00469-SKL, 2021 WL 9526868, at *6 (E.D. Tenn. Dec. 14, 2021) (finding the ALJ's conclusion that the plaintiff did not have a moderate or marked limitation in adapting or managing oneself was supported by substantial evidence when the ALJ cited the plaintiff's fair hygiene and cleanliness). Because the ALJ appropriately found that Plaintiff had only mild limitations in her ability to adapt or manage herself and either no limitations or mild limitations in the remaining three mental functioning areas—findings that Plaintiff does not challenge on appeal—the ALJ appropriately found that Plaintiff's mental impairments were not severe. *Jaari v. Saul*, No. 3:18-cv-0329, 2019 WL 4393542, at *15 (M.D. Tenn. Sept. 12, 2019) ("The regulations explain that mild limitations suggest that a mental impairment is non-severe." (citing 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1))).

Furthermore, even if the ALJ erred in finding Plaintiff's mental impairments were not severe, any such error would be harmless because the ALJ found Plaintiff had at least one severe impairment [Tr. 17 (finding Plaintiff's loss of central acuity due to optic nerve sheath meningioma was a severe impairment)], and properly considered the limiting effects of Plaintiff's mental impairments as part of his RFC determination, as further detailed below. *See Emard*, 953 F.3d at 852 ("An erroneous finding of nonseverity at step two is [] harmless where the ALJ properly considers nonsevere impairments at later steps." (citations omitted)). Accordingly, the Court denies Plaintiff's first basis for remand.

13

### B. The ALJ's Evaluation of Plaintiff's Impairments as part of His RFC Determination

Plaintiff next argues that the ALJ erred because he "failed to properly weigh [her] impairments in combination" when determining her RFC [Doc. 17 pp. 7–8]. Plaintiff argues that while the ALJ considered the impact of her left-eye impairment as part of the RFC determination, the ALJ failed to consider her left-eye impairment in combination with her "severe problems with her right eye," "her tumor [which] caused her [] headaches," and her "depression and anxiety" [*Id.* at 8]. The Commissioner responds that "the ALJ properly weighed all of Plaintiff's impairments in combination, and did not base his entire decision solely upon Plaintiff's left eye blindness" [Doc. 20 p. 7 (internal quotation omitted)]. Upon review, the Court finds no error in the ALJ's RFC analysis as the ALJ properly evaluated the limiting effect of each of Plaintiff's severe and non-severe impairments individually and based his determination on a review of the entire record.

#### 1. Applicable law

20 C.F.R. § 416.945(e) states that an ALJ must consider the "limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity. Social Security Ruling 96-8p similarly provides that "[i]n assessing [a claimant's RFC], the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" The Sixth Circuit has interpreted these provisions as meaning that an ALJ must consider the combined effect of all of a claimant's severe and non-severe impairments when determining their RFC. *See Simpson*, 344 F. App'x at 190 ("In other words, '[o]nce one severe impairment is found, the combined effect of all impairments must be considered [at later stages], even if other impairments would not be severe.'" (first alteration in original) (quoting *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009)).

14

The Sixth Circuit has also held, however, that an ALJ need not expressly discuss the combined effect of all of a claimant's severe and non-severe impairments as part of their RFC determination, provided the ALJ considered the limiting effect of each impairment individually and based their RFC determination on a thorough review of the entire record. *See Gooch v. Sec'y of Health & Hum. Servs.*, 833 F.2d 589, 591–92 (6th Cir. 1987) ("The ALJ's decision . . . was made after a 'thorough review of the medical evidence of record," and the fact that each [impairment] was discussed individually hardly suggests that the totality of the record was not considered."); *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851–52 (6th Cir. 2020) (citing *Gooch*, 833 F.2d at 591–92) (finding that while "the ALJ did not specifically discuss the combined effect of Emard's impairments or mention Emard's nonsevere impairments in assessing his [RFC]," the ALJ complied with 20 C.F.R. § 416.945(e) and SSR 96-8p by stating that "she had carefully considered the entire record and 'all symptoms' at this step in the process," citing that her decision was controlled by SSR 96-8p, and discussing "the functional limitation imposed by Emard's nonsevere impairments at step two"); *Showalter v. Kijakazi*, No. 22-5718, 2023 WL 2523304, at *4 (6th Cir. Mar. 15, 2023) (citing *Gooch*, 833 F.2d at 592) (rejecting the plaintiff's argument that the ALJ did not consider the combined effect of her impairments because the plaintiff acknowledged that "the ALJ evaluated each condition individually" and the ALJ stated he reached his RFC determination "[a]fter careful consideration of the entire record").

### 2. The ALJ properly considered Plaintiff's severe and non-severe impairments in combination when determining plaintiff's RFC

Plaintiff argues that the ALJ "failed to properly weigh the Plaintiff's impairments in combination," including "the fact that she had begun to have severe problems with her right eye in addition to being completely blind in her left, that her tumor caused her such headaches that she

15

would not be reliable to remain in the workplace, and that she suffered from depression and anxiety" [Doc. 17 pp. 7–8]. Plaintiff submits that the ALJ was "required to consider the combined effect of all of [] Plaintiff's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to cause disability" [*Id.* at 8 (first citing 20 C.F.R. § 404.1523; then citing *Barney v. Sec'y of Health & Human Servs.*, 743 F.2d 448, 453 (6th Cir. 1984)]. The Commissioner responds that substantial evidence supports the ALJ's RFC because "the ALJ properly weighed all of Plaintiff's impairments in combination, and did not base his entire decision solely upon Plaintiff's left eye blindness" [Doc. 20 p. 7 (internal quotations and citation omitted)]. The Commissioner argues that the ALJ acknowledged Plaintiff's statements regarding her right-eye vision problems, headaches, and depression and anxiety but properly found them to be inconsistent with the medical evidence [*Id.*].

The Court finds that the ALJ's decision reflects that he appropriately considered Plaintiff's impairments in combination in determining her RFC. The ALJ did not expressly discuss the combined effect of Plaintiff's impairments when assessing her RFC. As detailed below, however, the ALJ considered the limiting effect of each severe and non-severe impairment individually. The ALJ also stated that his RFC determination was based on his review of the entire record. Thus, the Court finds that the ALJ properly considered Plaintiff's impairments in combination when determining her RFC. *See Emard*, 953 F.3d at 852.

### a. The ALJ considered the limiting effect of each of Plaintiff's impairments individually

Plaintiff cites three impairments that she argues the ALJ failed to properly consider in combination with her left-eye impairment, including her right-eye vision problems, headaches, and depression and anxiety [Doc. 17 p. 8]. Plaintiff argues that the ALJ did not evaluate the limiting

effects of these three impairments and, to the extent the ALJ did so, his evaluation was not proper [*Id.* ("[The ALJ] did not properly evaluate the effect of the limited vision in her right eye upon her ability to work."); *id.* at 9 (arguing both that the ALJ failed "to make a determination regarding the effect of [Plaintiff's] headaches upon her ability to work" and that "[the ALJ] failed to properly assess the effect of the Plaintiff's headaches upon her ability to work.")]. Upon review, the Court finds that the ALJ considered the limiting effects of Plaintiff's right-eye vision problems, headaches, and mental impairments individually and that his evaluation of these impairments was supported by substantial evidence.

### i. Plaintiff's right-eye vision problems

The first impairment Plaintiff alleges the ALJ failed to properly consider in combination with her left-eye blindness is her right-eye vision problems. Plaintiff acknowledges that the ALJ considered evidence regarding her right-eye vision problems as part of his RFC determination [Doc. 17 p. 8 ("[the ALJ] correctly points out that early exams showed fairly normal vision in her right eye" (citing Tr. 22, 329))]. Plaintiff argues that the ALJ did not properly evaluate the effects of Plaintiff's right-eye vision problems, however, because he did consider Charles Famoyin, M.D.'s ("Dr. Famoyin"), November 2020 finding that Plaintiff has blurred vision in her right eye or Nathan Floyd, M.D.'s ("Dr. Floyd"), March 2021 statement that if Plaintiff did not complete her radiation treatment, she would likely lose vision in her right eye [*Id.* (citing Tr. 422, 644)]. Plaintiff also argues later in her brief that the ALJ "failed to properly make necessary findings of fact regarding the effect of [her] undoubted vision [impairment] in her right eye upon her ability to work" because he did not make necessary findings pursuant to Social Security Rulings 96-8p

17

and 83-14 [*Id.* at 10–11 (citations omitted)].[3]

Contrary to Plaintiff's assertions, the Court finds both that the ALJ considered the limiting effects of Plaintiff's right-eye vision problems as part of his RFC determination and that his determination that such vision issues did not necessitate further limitations than those included in Plaintiff's RFC is supported by substantial evidence.

The evidence that Plaintiff acknowledges the ALJ considered as part of his RFC determination is not the only evidence cited by the ALJ regarding Plaintiff's right-eye visual problems. The ALJ also recognized that Plaintiff testified at the hearing to having blurred vision in her right eye [Tr. 20]. In addition, the ALJ cited several portions of Plaintiff's treatment records regarding her right eye, including that Plaintiff "demonstrated 20/25 vision in the right eye" in January 2019 [*id.* at 21 (citing Exh. 4F)], that she "demonstrated 20/20 vision on the right" in February 2019 [*id.* (citing Exh. 3F)], that Plaintiff reported "declined vision in the right" in November 2020 "but could count fingers and read with the right eye" [*id.* (citing Exh. 7F)], that at a follow-up appointment, "it was recommended that [Plaintiff] receive radiation therapy for the left eye in order to preserve the right" [*id.*], that the record "shows sporadic radiation therapy from December 2020 through March 2021 but that "[i]t was noted in March 2021 that [Plaintiff] did not complete her course of radiation therapy as prescribed and was extremely noncompliant with

---

[3]     Plaintiff argues the ALJ was required under SSR 96-8p to consider her ability "to perform work-related functions such as working with large or small objects, following instructions, or avoiding ordinary hazards in the workplace" and required under SSR 83-14 to consider that "when an individual has a visual impairment . . .which causes the person to be a hazard to himself or others," "the manifestations of tripping over boxes while walking, inability to detect approaching persons or objects, difficulty in walking up or down stairs, would indicate to a decision maker that the remaining occupation base is significantly diminished for light work (and medium work as well)" [Doc. 17 p. 10 (first citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); then citing SSR 83-14, 1983 WL 31254 (Jan. 1, 1983))].

18

treatment" despite the fact "that she continued to have left eye pain and vision loss" [*id.* at 21–22 (citing Exhs. 11F & 13F)], and that "[t]he record is void of treatment evidence thereafter" [*Id.* at 22].

> In reviewing this and other evidence from the record, the ALJ found:
>
> Though the claimant has left eye blindness, examinations showed 20/25 and 20/20 vision on the right at various points. She complained of right eye blurred vision, but was able to read and count fingers. Her balance and motor functioning were not affected. She failed to complete radiation therapy, missing weeks worth of appointments, indicating that the severity of her vision loss as it translates to functional limitations on a daily basis is not as severe as alleged. Thus, the undersigned finds that avoidance of hazards and limitation on depth perception as a job duty accommodate the claimant's left eye vision loss.

[*Id.*].

The ALJ's citation to the applicable portions of the record regarding Plaintiff's right-eye vision problems as well as his discussion of why such evidence does not support greater functional limitations demonstrate that the ALJ considered the limiting effects of Plaintiff's right-eye vision problems as part of his RFC determination. *See Acosta-Padilla v. Comm'r of Soc. Sec. Admin.*, No. 1:15-CV-847, 2016 WL 3148610, at *7–8 (N.D. Ohio May 5, 2016) (finding the ALJ properly considered the impact of the plaintiff's visual limitations in the RFC determination by citing evidence regarding the plaintiff's decreased visual acuity as well as evidence indicating no visual impairments), *report and recommendation adopted sub nom.*, 2016 WL 3126253 (N.D. Ohio June 2, 2016). While the ALJ did not cite the specific findings from Dr. Famoyin and Dr. Floyd that Plaintiff cites on appeal, "[the ALJ] was not required to specifically cite to every piece of evidence." *See id.* at *7. This is especially true to the extent the ALJ considered substantially similar evidence regarding Plaintiff's blurred vision and the fact that the radiation treatment was meant to preserve Plaintiff's vision in her right eye [Tr. 21 (citing Plaintiff's testimony of right-

19

eye blurred vision, a November 2020 examination in which Plaintiff reported "declined vision in the right," and the recommendation "that [Plaintiff] receive radiation therapy for the left eye in order to preserve the right")]. The Court may not now reweigh this evidence on appeal. *See Blakley*, 581 F.3d at 406.

Rather, the Court's review is limited to whether substantial evidence supports the ALJ's decision. *See id.* Here, the ALJ's decision is supported by substantial evidence because the ALJ appropriately discounted the limiting effects of Plaintiff's right-eye vision problems based on his review of the relevant medical records, including those that indicate she retained the ability to read, count fingers, and maintain her balance, as well as the fact that she was non-complaint with treatment. *See Barnhart v. Comm'r of Soc. Sec.*, No. 5:19-cv-01236, 2020 WL 12990190, at *14 (N.D. Ohio Oct. 28, 2020) (finding the ALJ's evaluation of the limiting effects of the plaintiff's visual impairments was supported by substantial evidence when, "[i]n addition to considering the medical opinion evidence regarding Barnhart's alleged visual impairment, the ALJ took into account eye examinations, objective observations made by examiners, Barnhart's subjective statements regarding her vision, and Barnhart's activities of daily living"), *report and recommendation adopted*, 2022 WL 278113 (N.D. Ohio Jan. 31, 2022); *Pitrman v. Comm'r of Soc. Sec. Admin.*, No. 1:22-CV-00711-JPC, 2023 WL 3510752, at *18 (N.D. Ohio Apr. 10, 2023) ("[N]oncompliance [with treatment] is a permissible factor that the ALJ may consider . . . when assessing . . . a plaintiff's residual functional capacity."), *report and recommendation adopted*, 2023 WL 3496952 (N.D. Ohio May 17, 2023); *Dempsey v. Comm'r of Soc. Sec.*, No. 1:19-cv-5, 2020 WL 1921528, at * 8 (W.D. Mich. Apr. 21, 2020) (finding the ALJ's RFC was supported by substantial evidence in part because "the ALJ properly considered Plaintiff's noncompliance with his treatment and found that Plaintiff's impairments were not as limiting as Plaintiff alleged").

20

Finally, to the extent Plaintiff argues that the ALJ erred by failing to make findings consistent with Social Security Rulings 96-8p and 83-14, the Court identifies no error because, as just discussed, the ALJ properly considered the record evidence—including substantially similar evidence to that which Plaintiff relies on—regarding Plaintiff's right-eye vision problems in determining Plaintiff's RFC and Plaintiff otherwise fails to cite any additional evidence necessitating greater limitations. *See Cargile v. Comm'r of Soc. Sec.*, No. 1:14-cv-337, 2015 WL 2084701, at *5 (S.D. Ohio May 4, 2015) (finding the plaintiff "ha[d] not shown that the ALJ erred by failing to take SSR 83-14 . . . into account when evaluating her visual impairment" because while SSR 83-14 "indicate[s] that visual impairments *can* erode the occupational base . . . [the] plaintiff [had] not pointed to any evidence to show that a finding of disability [was] mandated"), *report and recommendation adopted*, 2015 WL 3745034 (S.D. Ohio June 15, 2015); *Tina S. v. Kijakazi*, No. 3:21-CV-00266-CRS, 2022 WL 7265964, at *9 (W.D. Ky. July 29, 2022) ("ALJ Pickett adequately complied with SSR 96-8p's requirements . . . by thoroughly discussing subjective and objective evidence relating to Claimant's visual impairments. Because ALJ Pickett determined Claimant had no functional limitations relating to her left eye vision, he did not impose any work-related functions. The Court does not read SSR 96-8p to require ALJ Pickett to state verbatim functions [contained in SSR 96-8p] where no such functional limitations are reflected in the record."), *report and recommendation adopted*, 2022 WL 4595066 (W.D. Ky. Sept. 30, 2022).[4]

For these reasons, the Court finds that the ALJ considered the limiting effect of Plaintiff's

---

[4]     Notably, the ALJ did assess hazard-related limitations related to Plaintiff's left-eye vision loss, indicating the ALJ did assess Social Security Rulings 96-8p and 83-14 for those impairments he believed warranted functional limitations [Tr. 22 ("[T]he undersigned finds that avoidance of hazards and limitation on depth perception as a job duty accommodate the claimant's left eye vision loss.")].

21

right-eye visual impairments in determining Plaintiff's RFC and that his conclusion that such impairments did not warrant greater functional limitations than those included in Plaintiff's RFC is supported by substantial evidence.

### ii. Plaintiff's headaches

Plaintiff argues that the ALJ also failed to properly evaluate the limiting effects of Plaintiff's headaches on her ability to work [Doc. 17 p. 9]. Plaintiff argues that the ALJ "failed to properly assess the effect of [her] headaches" in light of Timothy Fullgar, M.D.'s ("Dr. Fullgar"), treatment notes that she had headaches as well as Plaintiff's own testimony that she had headaches almost every day [*Id.* (first citing Tr. 379; then citing *id.* at 39)]. The Commissioner responds that the ALJ appropriately considered the limiting effect of Plaintiff's headaches, including by acknowledging Plaintiff's testimony regarding her headaches but finding her testimony was not supported by the objective evidence [Doc. 20 pp. 9–11]. The Commissioner further argues that "any symptoms of pain that Plaintiff attributed to headaches were properly considered by the ALJ as being related to her optic nerve sheath meningioma," which "the ALJ properly accounted for [in] the limitations that were supported by the record in assessing the RFC" [*Id.* at 11]. Upon review, the Court finds that the ALJ considered the limiting effects of Plaintiff's headaches as part of his RFC determination and his finding that these headaches did not necessitate greater functional limitations than those included in his RFC determination were supported by substantial evidence.

As an initial matter, the Court questions whether Plaintiff's headaches were a medically determinable impairment separate from Plaintiff's left-eye blindness and optic nerve sheath meningioma impairment. Social Security Ruling 19-4p distinguishes between "primary" and "secondary" headaches, stating, "[p]rimary headaches occur independently and are not caused by another medical condition" while "[s]econdary headaches are symptoms of another medical

22

condition such as fever, infection, high blood pressure, stroke, or tumors." SSR 19-4p, 2019 WL 4169635, at *3 (Aug. 26, 2019). Social Security Ruling 19-4p further states that "[the Commissioner] may establish only a primary headache disorder as [a medically determinable impairment]" and "will not establish secondary headaches . . . as [a medically determinable impairment] because secondary headaches are symptoms of another underlying medical condition" and "successful treatment of the underlying condition will alleviate the secondary headaches." *Id.* at *5. As noted by the ALJ, Plaintiff alleged in her initial application that her ability to work was limited due to any eye impairment and alleged at the administrative hearing that she has frequent headaches due to eye strain [Tr. 20]. In turn, Plaintiff argues on appeal "that her tumor cause[s] her such headaches that she would not be reliable to remain in the workplace" [Doc. 17 p. 8].[5] Based upon Plaintiff's representations at the administrative hearing and on appeal, it would appear Plaintiff's headaches are not "primary headaches" but rather "secondary headaches" and, as such, are not a medically determinable impairment.

Even assuming Plaintiff's headaches are a separate medically determinable impairment that the ALJ was required to consider as part of his RFC determination, the Court finds that the ALJ properly considered the limiting effects of Plaintiff's headaches as part of his RFC analysis. Specifically, the ALJ referenced Plaintiff's statements from her function reports that "she gets frequent headaches that limit her ability to move around" as well as her testimony that "she has frequent headaches due to eye strain" [Tr. 20]. The ALJ also cited, however, that Plaintiff stated in her function reports that "she provides care for her children with the help of a friend, does housework, . . . denied significant difficulty with personal care and indicated preparing meals for

---

[5]      Plaintiff similarly argued in her brief to the Appeals Council that "[she] primarily suffers from vision loss and headaches as a result of a tumor behind her left eye" [Tr. 299].

her family on a daily basis" [*Id.* at 20 (citing Exh. 9E)]. Ultimately, the ALJ found that "[Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence" [*Id.* at 20–21]. In making this determination, the ALJ cited the relevant medical evidence, including a March 2019 treatment record in which Plaintiff "was assessed as having left eye blindness, left eye optic atrophy, and benign neoplasm of unspecific site of left orbit" but "was otherwise unimpaired" [*Id.* at 21 (citing Exh. 5F)]. This treatment record, in turn, lists that she was "Negative" for "Headache[s]" at that time [*Id.* at 352].

Based upon the ALJ's citations to Plaintiff's statements regarding her headaches, along with daily activities and medical records inconsistent with such headaches, the Court finds that the ALJ considered the limiting effect of Plaintiff's headaches but found them unsupported by the record evidence—a finding that is in turn supported by substantial evidence in the record. *See, e.g.*, *Moore v. Comm'r of Soc. Sec.*, No. 2:17-cv-0144, 2018 WL 1477233, at *9–14 (S.D. Ohio Mar. 27, 2018) (finding the ALJ's RFC determination was supported by substantial evidence where the ALJ acknowledged the plaintiff's testimony about the impact of her headaches but found them inconsistent with treatment records and the plaintiff's reported daily activities).

Finally, even if the ALJ failed to properly consider the limiting effects of Plaintiff's headaches on her ability to perform work, Plaintiff fails to cite to any evidence supporting greater limitations stemming from her headaches. Plaintiff relies on her own testimony "that she had headaches almost every day" and the fact that "neurosurgeon, Dr. Fullagar, . . . noted that she had headaches" [Doc. 17 p. 9]. As just discussed, however, the ALJ expressly considered Plaintiff's statements about her headaches but found her statements unsupported by the record evidence [Tr. 20–21]. As to Dr. Fullagar's treatment notes, the Court finds that such notes do not establish any

24

greater limitations than those included in Plaintiff's RFC.  While Dr. Fullagar's notes indicate that Plaintiff had a history of headaches, they also relay that a review of her systems was "[n]egative for . . . headaches" at that time [*Id.* at 379 (listing "Headache" under "Past Medical History" but also listing under "Review of Systems" that Plaintiff's "Neurological" systems were "Negative for . . . headaches")].  Furthermore, even assuming Dr. Fullagar's examination had found a review of Plaintiff's neurological systems was positive for headaches, "[t]he mere diagnosis of [an impairment] . . . says nothing about the severity of the condition."  *Higgs*, 880 F.2d at 863.  Thus, the Court finds that Plaintiff has failed to present any evidence supporting greater functional limitations as a result of her headaches than what was assessed by the ALJ.

For these reasons, the Court finds that the ALJ considered the limiting effect of Plaintiff's headaches and his finding that they do not impose limitations beyond what is include in Plaintiff's RFC is supported by substantial evidence.

### iii.  Plaintiff's mental impairments

The final impairment that Plaintiff alleges the ALJ failed to consider in combination with her left-eye blindness is her depression and anxiety [Doc. 17 p. 8].  Plaintiff's only argument regarding her mental impairments is that the ALJ erred by failing to find her mental impairments were a severe impairment at step two [*Id.* at 9].  As found above, however, the ALJ did not err in finding Plaintiff's mental impairments were not a severe impairment.  *See supra* Section V(A)(2).  While Plaintiff does not further challenge the ALJ's evaluation of her mental impairments as part of her RFC determination, the Court notes that the ALJ must nevertheless consider both nonsevere and severe impairments as part of his RFC determination.[6]

---

[6]     Whether the ALJ considered the limiting effects of Plaintiff's mental impairments as part of his RFC determination is also relevant to whether the ALJ's finding that Plaintiff's mental

25

Here, the ALJ did consider the limiting effects of Plaintiff's nonsevere mental impairments as part of his RFC determination when evaluating the persuasiveness of both the state agency medical consultants' opinions and the consultative examiner's opinion [Tr. 22–23]. As to the state agency consultants' opinions, the ALJ found them persuasive to the extent they found Plaintiff's mental impairments were not severe [*Id.* at 22]. The ALJ relied on the fact that while "a consultative examiner identified moderate deficits in mental functioning, [Plaintiff] sought no mental health treatment and demonstrated normal mental functioning during medical treatment" [*Id.* (citing Exhs. 1A, 2A, 5A, 6A)]. The ALJ then evaluated the persuasiveness of the consultative examiner's opinion, finding:

> [The] consultative examiners opinion [is] unpersuasive. She identified depression as an impairment, but offered moderate deficits in social relating and adaption, and mild deficits in memory and concentration. Her assessment appears to be based in large part on the claimant's subjective reports that are not otherwise corroborated by the evidence. The claimant did not seek mental health treatment, nor did she take prescribed medications for such. She did not demonstrate deficits in social functioning or adaption during medical treatment as she was cooperative with providers and noted to be independent in self-care. She specifically denied memory deficits during neurological treatment and did not demonstrate or endorse concentration or attention deficits. She reported managing finances, caring for three small children, having a good relationship with her fiancé and some family, preparing meals, and performing household chores. From a longitudinal review of the evidence, including the claimant's own function reports, there is little support for an assessment of moderate deficits in any area of mental functioning, and no more than mild deficit in social relating and adaption. (Exhibit 6F).

[*Id.* at 22–23].

The ALJ's reliance on the fact that Plaintiff did not seeking mental health treatment, did not take prescribed medications, did not report deficits in several mental functioning areas, and reported daily activities inconsistent with greater limitations—including her ability to manage

---

impairments were not severe is harmless. *See supra* Section V(A)(2).

finances, care for her children, prepare meals, perform household chores, and maintain a good relationship with her fiancé and family—in evaluating the persuasives of the relevant medical opinions demonstrates both that the ALJ considered the limiting effect of Plaintiff's mental impairments in determining Plaintiff's RFC and that his conclusion that such mental impairments did not necessitate any greater functional limitations than what was included in Plaintiff's RFC is supported by substantial evidence. *See Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 598 (6th Cir. 2018) (finding the ALJ appropriately considered the limiting effects of the plaintiff's mental impairments later in the analysis despite finding them non-severe when the ALJ cited the plaintiff's lack of mental health treatment as a reason to find the claimant's statements unsupported by the evidence).[7]

Accordingly, the Court finds both that the ALJ considered the limiting effects of Plaintiff's right-eye vision problems, headaches, and mental impairments in determining his RFC and that his conclusion that they did not necessitate any greater functional limitations than what was included in his RFC determination is supported by substantial evidence.

> **b. The ALJ based his RFC determination on a thorough review of the record**

Having found the ALJ appropriately considered the limiting effect of each of Plaintiff's severe and non-severe impairments as part of his RFC determination, the remaining question is whether the ALJ's decision demonstrates that his RFC determination was based on a thorough review of the entire record. *See Gooch*, 833 F.2d at 591–92 ("The ALJ's decision . . . was made

---

[7] That the ALJ considered the limiting effect of Plaintiff's mental impairments is also evidenced by the ALJ's statement at the end of his step two analysis in which he stated that his "[RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis" [Tr. 19].

27

after a 'thorough review of the medical evidence of record,'" and the fact that each [impairment] was discussed individually hardly suggests that the totality of the record was not considered.") Here, the Court finds that the ALJ's RFC determination was based on a thorough review of the entire record. The ALJ began his RFC analysis by stating that he reached his RFC determination "[a]fter careful consideration of the entire record" and that "[i]n making this finding, [he] ha[d] considered all symptoms" [Tr. 20]. *See Emard*, 953 F.3d at 851 ("Although the ALJ did not specifically discuss the combined effect of Emard's impairments or mention Emard's nonsevere impairments in assessing his residual functional capacity, she stated that she had carefully considered the entire record and 'all symptoms' at this step in the process."). The ALJ then went on to detail several of the medical records spanning from early 2018 to March 2021 [Tr. 21–22]. He also analyzed the persuasiveness of each of the relevant medical opinions [*Id.* at 22–23]. Finally, the ALJ concluded his RFC analysis by stating his RFC "finding has included consideration of all the alleged medically determinable impairments, both singularly and in combination" [*Id.* at 23]. The Court finds this evidence sufficient to show not only that the ALJ considered the limiting effect of each of Plaintiff's severe and non-severe impairments, but that also he thoroughly considered the entire record in doing so.

Accordingly, the Court finds that while the ALJ did not expressly consider all of Plaintiff's severe and non-severe impairments in combination when determining Plaintiff's RFC, his decision establishes that he did consider all impairments in combination when determining Plaintiff's RFC. *See Emard*, 953 F.3d at 851–52. The Court therefore denies Plaintiff's second basis for remand.

### C. The ALJ's Evaluation of Plaintiff's Symptoms

Plaintiff's remaining argument is that the ALJ erred by failing to properly weigh her symptoms pursuant to Social Security Ruling 16-3p [Doc. 17 p. 11]. The Commissioner responds

28

that the ALJ properly considered all of the available favorable and unfavorable evidence in evaluating the intensity, persistence, and limiting effects of Plaintiff's symptoms [Doc. 20 p. 13]. Upon review, the Court finds that the ALJ applied the correct legal standards in evaluating Plaintiff's symptoms and that his determination that they were not entirely consistent with the record is supported by substantial evidence.

### 1. Applicable law

A claimant's subjective complaints are one of many factors an ALJ is to consider when making the RFC finding. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). When a disability determination that would be fully favorable to the plaintiff cannot be made solely based on the objective medical evidence, an ALJ must analyze the symptoms of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in 20 C.F.R. sections 404.1529(c)(3) and 404.929(c)(3) and Social Security Ruling 16-3p, 2017 WL 5180304.

> In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so, then 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994) (citing *Jones v. Sec'y, Health & Hum. Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)); *see also Chopka v. Saul*, No. 5:18CV945, 2019 WL 4039124, at *6 (N.D. Ohio Aug. 27, 2019).

When evaluating a claimant's subjective complaints, the Social Security Administration "will review the case record to determine whether there are explanations for inconsistencies in the

individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them." SSR 16-3p, 2017 WL 5180304, at *10. The ALJ must consider certain factors when evaluating a claimant's alleged symptoms, including:

> (i)   the claimant's daily activities;
>
> (ii)   the location, duration, frequency, and intensity of the pain or other symptoms;
>
> (iii)   precipitating and aggravating factors;
>
> (iv)   the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms;
>
> (v)   treatment, other than medication, a claimant receives or has received for relief of pain or other symptoms;
>
> (vi)   any measures the claimant takes or has taken to relieve the pain or other symptoms; and
>
> (vii)   other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529, 416.929. The decision need not contain discussion and citations as to every possible factor to be sufficiently specific. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004).

An ALJ's determination of a claimant's credibility regarding statements concerning his symptoms is to be afforded "great weight and deference," and courts "are limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record." *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 649 (6th Cir. 2013) (quoting *Jones*, 336 F.3d at 475–76 (6th

30

Cir. 2003)); *see also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character"); *Barber v. Kijakazi*, No. 1:20-0064, 2022 WL 209268, at *6 (M.D. Tenn. Jan. 24, 2022) (explaining that although the Commissioner removed the term "credibility" when SSR 16-3p was implemented, "there appears to be no substantive change in the ALJ's analysis and nothing to indicate that case law pertaining to credibility evaluations" has been abrogated (citation omitted)), *report and recommendation adopted*, 2022 WL 853208 (M.D. Tenn. Mar. 22, 2022).

## 2. The ALJ properly evaluated Plaintiff's symptoms

In his decision, the ALJ acknowledged Plaintiff's statements regarding her symptoms, stating:

> Upon initial application, the claimant alleged that her ability to work was limited due to an eye impairment. (Exhibit 2E). In function reports, she alleged that her vision loss is caused by a tumor behind the eye and that she gets frequent headaches that limit her ability to move around. She also indicated in function reports that she provides care for her children with the help of a friend, does housework, and spends time at home. She denied significant difficulty with personal care and indicated preparing meals for her family on a daily basis. She denied driving due to vision loss and reported that she does not go out alone. (Exhibit 9E). At the hearing, she testified similarly, alleging that she cannot see from the left eye and has blurred vision on the right. She alleged that she cannot read small print, and has frequent headaches due to eye strain. She testified that her mother lives with her to help care for her children and that cannot see well enough to function independently.

[Tr. 20]. The ALJ then made the following findings regarding Plaintiff's symptoms:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

31

[*Id.*].  The ALJ then proceeded to detail the findings contained in Plaintiff's treatment records from early 2018 to March 2021 [*Id.* at 20–22].  Ultimately, the ALJ concluded:

> Though the claimant has left eye blindness, examinations showed 20/25 and 20/20 vision on the right at various points.  She complained of right eye blurred vision, but was able to read and count fingers.  Her balance and motor functioning were not affected.  She failed to complete radiation therapy, missing weeks worth of appointments, indicating that the severity of her vision loss as it translates to functional limitations on a daily basis is not as severe as alleged.  Thus, the undersigned finds that avoidance of hazards and limitation on depth perception as a job duty accommodate the claimant's left eye vision loss.

[*Id.* at 22].

On appeal, Plaintiff argues that the ALJ failed to properly evaluate her symptoms pursuant to Social Security Ruling 16-3p [Doc. 17 p. 11].  Plaintiff cites her testimony that "she could not watch television or use the computer because of the blurriness in her right eye"; "she had daily headaches"; and "she was nervous around people" [*Id.* (citing Tr. 38, 39, 41)].  Plaintiff submits that "all of these allegations are supported by the medical evidence of record, and the [ALJ] was in error in not finding [] Plaintiff fully credible in view of [her] eye tumor [] resulting in problems including that she might completely lose her vision in both eyes" [*Id.*]

The Court finds that Plaintiff's arguments do not overcome the "great weight and deference" afforded to the ALJ's determination that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the record evidence.  *See Schmiedebusch*, 536 F. App'x at 649.  The ALJ complied with the mandates of Social Security Ruling 16-3p and 20 C.F.R. sections 404.1529 and 416.929 by reciting Plaintiff's statements and testimony regarding the intensity, persistence, and limiting effects of her symptoms but detailing record evidence inconsistent with such statements and testimony, including the findings contained in Plaintiff's medical records from 2018 to 2021, Plaintiff's history of

32

noncompliance with treatment, and her reported daily activities [Tr. 20–22]. *See, e.g., Christian v. Comm'r of Soc. Sec.*, No. 3:20-cv-1617-JDG, 2021 WL 3410430, at *17 (N.D. Ohio Aug. 4, 2021) ("The ALJ referenced Christian's allegations and then contrasted them with the medical evidence, including examination findings, as well as the opinion evidence . . . . Reading the decision as a whole, it is clear why the ALJ did not accept the entirety of Christian's allegations.")

In particular, the ALJ acknowledged Plaintiff's testimony regarding her right-eye blurriness, but found such testimony inconsistent with the record evidence showing Plaintiff retained the ability to read, count fingers, and maintain balance [Tr. 20 ("At the hearing, [Plaintiff] testified . . . that she . . . has blurred vision on the right."); *id.* at 22 ("[Plaintiff] complained of right eye blurred vision, but she was able to read and count fingers. Her balance and motor functioning were not affected.")]. The evidence relied on by the ALJ is substantial evidence to support his conclusion that Plaintiff's testimony was inconsistent with the record. *See, e.g.*, *Barnhart*, 2020 WL 12990190, at *14; *see also supra* Section V(B)(2)(a)(i) (finding the ALJ's decision not to assess greater functional limitations because of Plaintiff's right-eye vision loss was supported by substantial evidence). Similarly, the ALJ acknowledged Plaintiff's testimony regarding her headaches, but also cited evidence indicating Plaintiff was negative for headaches upon examination and that Plaintiff retained the ability to perform various daily activities [Tr. 20 ("[Plaintiff] alleged that she . . . has frequent headaches due to eye strain."); *id.* at 21("[Plaintiff] was assessed as having left eye blindness, left eye optic atrophy, and benign neoplasm of unspecific site of left orbit. She was otherwise unimpaired" (citing *id.* at 350–65)); *id.* at 352 (finding Plaintiff was negative for headaches); *id* at 21 (noting Plaintiff "reported a capacity for paying bills, grocery shopping, performing household chores, and preparing meals")]. Substantial

evidence supports the ALJ's decision to not fully credit such testimony as well. *See, e.g.*, *Moore*, 2018 WL 1477233, at \*9–14; *see also supra* Section V(B)(2)(a)(ii) (finding the ALJ's decision not to assess greater limitations because of Plaintiff's headaches was supported by substantial evidence). Finally, while the ALJ did not expressly reference Plaintiff's testimony regarding her nervousness in crowds, the ALJ does not need to have expressly cited every piece of evidence in the record. *Acosta-Padilla*, 2016 WL 3148610, at \*6 ("[I]t is not necessary for the ALJ to discuss every piece of evidence in the record, and 'failure to cite specific evidence does not indicate that it was not considered.'" (quoting *Dykes v. Barnhart*, 112 F. App'x 463, 467–68 (6th Cir. 2004))).

Importantly, Plaintiff fails to cite any evidence that would be contrary to the ALJ's conclusion that Plaintiff's statements and testimony regarding the intensity, persistence, and limiting effects of her symptoms are not consistent with the record evidence. While Plaintiff asserts that her testimony regarding her right-eye vision blurriness, headaches, and nervousness in crowds "are supported by the medical evidence of record" [Doc. 17 p. 11], she fails to cite any such medical evidence. An ALJ's responsibility under Social Security Ruling 16-3p is to evaluate the extent to which the claimant's statements are consistent with the remainder of the record evidence. *See Boggs v. Kijakzi*, No. 2:21-CV-17-DCP, 2022 WL 4360940, at (E.D. Tenn. Sept. 20, 2022) ("[I]t is an ALJ's duty to compare a claimant's statements about the severity of their symptoms to the relevant medical evidence and determine their consistency" (citing SSR 16-3p, 2017 WL 5180304, at \*10)). Here, Plaintiff has failed to cite any such record evidence that supports her statements or otherwise contradicts the ALJ's finding that such testimony is inconsistent with the record evidence. In the absence of any such evidence, the Court rejects Plaintiff's remaining basis for remand. *See, e.g.*, *Hockstedler v. Kijakazi*, No. 4:20-CV-025-DCP,

2021 WL 3645095, at *13 (E.D. Tenn. Aug. 17, 2021) (upholding the ALJ's determination that the plaintiff's statements about her symptoms were not entirely consistent with the record evidence in part because "Plaintiff fail[ed] to point to any evidence in the medical record or supporting case law that would require the ALJ" to reach a different conclusion).

## VI.  CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 16**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 19**] will be **GRANTED**.  The decision of the Commissioner will be **AFFIRMED**.  The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge

35